AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Western District of Texas
### Pecos Division

**FILED**
September 07, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: __M. Ramirez__
DEPUTY

| | |
|---|---|
| United States of America ) | |
| v.                       ) | Case No. 4:22-MJ-915 |
| Albino Chavez-Cuellar    ) | |
| *Defendant(s)*           ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __September 2, 2022__ in the county of __Pecos__ in the
__WESTERN DISTRICT OF TEXAS__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 8 USC 1324(a)(1)(A)(ii) & (a)(1)(B)(i) | Transporting Illegal Aliens for Financial Gain |
| 8 USC 1324 (a)(1)(A)(v)(I) | Conspiracy to Commit Alien Smuggling |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Martin Salisbury Jr.
*Printed name and title*

Complaint sworn to telephonically and electronically signed on this date.
FED.R.CRIM.P. 4.1(b)(2)(A)

Date: __09/07/2022__

_____
*Judge's signature*

Honorable Judge Ronald C. Griffin
United States Magistrate Judge

City and state: __Pecos, Texas__

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

Pecos Division

I, Martin Salisbury Jr., being duly sworn, depose and state as follows:

## I. PROBABLE CAUSE

1. On September 2, 2022, Border Patrol Agent (BPA) Eugenio Vega was performing roving patrol duties on Highway 285 south of Fort Stockton, Texas. Highway 285 connects to Highway 90 in Sanderson, Texas. Both Highway 285 and Highway 90 have notorious reputations as alien smuggling routes frequently favored by load drivers due to the roadways being close to the U.S./Mexico international boundary (Rio Grande River) located to the south.

2. At approximately 12:00 a.m., BPA Vega observed a 4-door sport utility vehicle (SUV) pass his stationary location and travel north on Highway 285 into Fort Stockton. BPA Vega decided to investigate the vehicle further and began following it. While travelling behind the SUV, BPA Vega noticed a person's head duck down in the rear seat. This type of exhibited behavior is extremely common for illegal aliens who and have just noticed law enforcement's nearby presence as they do not want to be noticed. BPA Vega also noticed that the vehicle appeared to be riding low in the rear. It is also extremely common for alien smugglers to overload their vehicle beyond the vehicle's designed passenger capacity which will oftentimes lead to the vehicle sitting lower.

3. While continuing to follow the vehicle, BPA Vega noticed the vehicle bared California license plates. BPA Vega requested vehicle registration checks on the vehicle's license plates which revealed the SUV was registered to Albino Chavez-Cuellar of Paso Robles, California. The vehicle had no checkpoint or port of entry crossings on file. The sighting of a California plated vehicle on Highway 285 at such a late nighttime hour is not common of the general motoring public in the area. There are no areas of public interest along Highway 285. The act of smuggling illegal aliens will oftentimes take place during late evening hours or hours of darkness as the lack of natural light helps to conceal illegal aliens who are being picked up out of the brush and transported in furtherance north.

4. While following the vehicle, BPA Vega noticed the vehicle made numerous turns and lane changes without signaling. Although such actions are not a violation of Federal law, they do provide articulable facts that the driver may be more focused on the law enforcement officer following them than on safe and proper driving. Based off BPA Vega's experience he believed that the driver of the vehicle was looking for a place to "bail out." Bailing out is a term used by law enforcement to describe the act of individuals who abruptly stop their vehicle and abscond on foot in an effort to avoid apprehension by law enforcement.

5. Due to the aforementioned circumstances and articulable facts, BPA Vega activated his service vehicle's red and blue emergency lights to signal the SUV to yield and come to a stop. Instead of coming to a complete and immediate stop, the driver of the vehicle travelled on for

approximately 3 blocks before pulling over. The initiation of the vehicle stop took place within Fort Stockton, Texas.

5. Once the vehicle came to a complete stop, BPA Vega approached the SUV on foot and identified himself as a United States Border Patrol agent to the driver and four passengers. BPA Vega questioned the driver, later identified as Albino Chavez-Cuellar as to his citizenship. BPA Vega determined that Chavez-Cuellar is an illegal alien from Mexico. BPA Vega then turned his attention to the 4 passengers and determined that they were also illegal aliens and were all citizens and nationals of Mexico. BPA Vega then read all 5 individuals their *Miranda* rights and placed all 5 under arrest. All individuals, including Chavez-Cuellar were transported to the Fort Stockton Border Patrol Station for further investigation.

6. Chavez-Cuellar was then transferred to the Central Processing Center at the Alpine Border Patrol Station for routine processing. While at the Alpine Border Patrol Station, Chavez-Cuellar was again read his *Miranda* rights and provided Service Form I-214. Chavez-Cuellar indicated that he both understood and waived his right to have legal counsel present prior to questioning. During a post-*Miranda* interview, Chavez-Cuellar admitted that he had travelled from California to the west Texas area to pick up a friend who he knew to be an illegal alien. Chavez-Cuellar claimed that his friend had gotten lost and was not around when he arrived to pick him up. Chavez-Cuellar admitted that he picked up and transported the remaining 4 illegal aliens instead. Chavez-Cuellar admitted that he knew the group he had been caught transporting were in fact illegal aliens. Chavez-Cuellar also admitted that the group had travelled with Chavez-Cuellar's friend on foot during the group's illegal entry. Chavez-Cuellar stated that he was going to transport the group of illegal aliens back to Paso Robles, California. Although he denied getting paid for transporting his friend, Chavez-Cuellar admitted he was going to receive financial compensation for the cost of driving to Texas and driving back to California with his passengers.

7. During a post-*Miranda* interview, one of the passengers travelling with Chavez-Cuellar stated that Chavez-Cuellar's unidentified friend had served as the group's foot guide. This unidentified co-conspirator guided the group to the highway before walking south in order to return to Mexico. The interviewed passenger stated that the unidentified foot guide communicated and coordinated with an individual he believed to be the load driver in order to pick up the group off the side of the highway.

Chavez-Cuellar was encountered and arrested in Pecos County, which is within the Western District of Texas.

_____
Martin Salisbury Jr.
Border Patrol Agent

Attested to by applicant pursuant to Rule 4.1 of Fed. R. Crim. P. by phone & email.

_____
Ronald C. Griffin
United States Magistrate Judge